UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ANDREW MAMANTOV,                        )
                                        )
                 Plaintiff,             )
                                        )
         v.                             )   Civil Action No. 12-407 (RBW)
                                        )
LISA P. JACKSON,                        )
Administrator, United States Environmental )
Protection Agency,                      )
                                        )
                 Defendant.             )
_____)

## MEMORANDUM OPINION

Plaintiff Andrew Mamantov brings this action against the defendant asserting claims for retaliation and discrimination based on age and sex in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (2006), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-1 to -17 (2006), respectively. Complaint ("Compl.") ¶ 1. Currently before the Court is the Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that the defendant's motion must be granted in part and denied in part.

### I. BACKGROUND

The complaint contains the following factual allegations. The plaintiff, a 67-year-old man, has worked as a chemist with the Environmental Protection Agency ("EPA") "for over 30

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Memorandum of Points and Authorities in Support of Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment ("Def.'s Mem."); (2) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pl.'s Opp'n"); and (3) the Defendant's Reply to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment ("Def.'s Reply").

1

years." Compl. ¶¶ 5, 12.  "Since 1983, his job position has been classified as a [c]hemist, GS-1320-13."[2]  Id. ¶ 12.  He currently "works in the Exposure Assessment Branch . . . in the Office of Pollution Prevention and Toxics, . . . Economics, Exposure and Technology Division" (the "Division").  Id.  He is "the only organic chemist in the [Exposure Assessment Branch]."  Id.

In 1999, the plaintiff began serving as the "Work Assignment Manager for the high profile High Protection Volume . . . [C]hemical [C]hallenge [P]rogram" (the "Program").  Id. ¶ 13, 37.  As a manager for the Program, the plaintiff was responsible for "track[ing] and coordinat[ing] all of the work and assignments for the [D]ivision."  Id. ¶ 37.  He "work[ed] independently" without review "by senior staff or his supervisor."  Id. ¶ 14.  As manager of the Program, the plaintiff also "prepar[ed] and review[ed] fate assessments."  Id. ¶ 13.  "[T]he work he conduct[ed] developing fate assessments is characteristic of the GS-14 level" because the plaintiff "serve[d] as [an] expert . . . , his findings sometimes result[ed] in policy changes that affect[ed] the work of other experts . . . , [and] his recommendations affect[ed] the work of the Exposure Assessments Branch."  Id. ¶ 25.

"[I]n or about 2002," the plaintiff began applying for GS-14 level positions.  Id. ¶ 19.  At that time, Cathy Fehrenbacher was the plaintiff's "manager and the selecting official" for the GS-14 position.  Id.  Between 2002 and 2010, the plaintiff continued to work under Ms. Fehrenbacher's supervision without promotion to any GS-14 position.  Id. ¶¶ 20-37.

The plaintiff alleges that several discriminatory, harassing, and retaliatory events occurred between 2002 and 2009, and cites these events as "background evidence" of the "continuing pattern of discrimination and retaliation" to which the defendant has subjected him.

---

[2] "GS" stands for "General Schedule," which is a "classification and pay system [that] covers the majority of civilian white-collar Federal employees (about 1.5 million worldwide) in professional, technical, administrative, and clerical positions."  General Schedule Classification and Pay, U.S. Office of Personnel Management Official Website (last visited Oct. 12, 2012), http://www.opm.gov/oca/pay/html/GS-Facts.asp.

Pl.'s Opp'n at 7; Compl. ¶ 18. Specifically, the plaintiff highlights a 2002 non-selection "for a GS-14 vacancy within the [Exposure Assessment Branch]," the failure to "implement the results of [a 2006] desk audit," and the issuance of "unwarranted written reprimands" between 2006 and 2009. Compl. ¶¶ 19, 27-28. Based on these alleged acts, the plaintiff filed his first administrative complaint in July 2009 ("July 2009 administrative complaint").[3] Pl.'s Opp'n at 1; Compl. ¶ 29.

While the July 2009 administrative complaint was pending, the plaintiff applied for a "GS-14 level chemical engineer/physical scientist" position in the Exposure Assessment Branch. Compl. ¶ 30. The plaintiff made the initial "certification" for the position, "meaning he was qualified for the [GS-14 level] position." Id. Ms. Fehrenbacher was again the selecting official, id., and "knew" of the plaintiff's July 2009 administrative complaint "at the time she selected for the position," id. ¶ 31.

In November 2009, Ms. Fehrenbacher did not select the plaintiff for the GS-14 level chemical engineer/physical scientist position ("November 2009 non-selection"). Pl.'s Opp'n at 2. Instead, and "[w]ithout interviewing any candidates, Ms. Fehrenbacher selected Christina Cinalli," Compl. ¶ 32, who is younger than the plaintiff, id. ¶ 33. Unlike the plaintiff, Ms. Cinalli did not have a graduate degree, "had not written any articles published in a peer-reviewed publication," was not "on the editorial board of a peer-reviewed journal," had not been "acknowledged by her peers as an expert in her field," was not a "member of an exclusive scientific society," and had not "led or facilitated any national or international symposia." Id.. In further contrast to Ms. Cinalli, the plaintiff "is an internationally-recognized Ph.D. chemist" with "over 30 years of experience in the Exposure Assessment Branch." Id. ¶ 34.

---

[3] This administrative complaint was labeled "Agency No. 2009-0068-HQ." Pl.'s Opp'n at 1.

In December 2009, the plaintiff "contacted an [Equal Employment Opportunity] [c]ounselor" at the EPA regarding his November 2009 non-selection. Pl.'s Opp'n at 2; see also Def.'s Mem. at 2. In February 2010, when counseling failed to resolve the plaintiff's concerns, he filed a second administrative complaint ("February 2010 administrative complaint").[4] Def.'s Mem. at 2. In this complaint, the plaintiff "alleg[ed] claims for age and sex discrimination, as well as retaliation arising out of his [November 2009] non-selection." Pl.'s Opp'n at 2.

In March 2010, Ms. Fehrenbacher reassigned the plaintiff's managerial duties under the Program, which he had been performing for more than a decade, to a GS-14 level female employee, Dr. Diana Locke ("March 2010 reassignment"). Compl. ¶¶ 36-37. Since Dr. Locke's retirement, the managerial duties have been reassigned to a "substantially younger" GS-15 level male employee. Id. ¶ 37. The plaintiff amended his February 2010 administrative complaint to include the March 2010 reassignment, Def.'s Mem. at 3, and now contends that "the reassignment of [his] GS-14 level work [was] an effort to defeat his claim that he is entitled to promotion to a position at the GS-14 level," Compl. ¶ 38.

After exhausting his administrative remedies,[5] the plaintiff filed a complaint asserting the following four claims against the defendant: age discrimination in violation of the ADEA (Count I), id. ¶¶ 41-43, sex discrimination in violation of Title VII (Count III), id. ¶¶ 48-50, and two counts of retaliation in violation of the ADEA and Title VII (Counts II and IV), id. ¶¶ 44-47, 51-53. The defendant has now moved to dismiss pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment on all four counts.

---

[4] This administrative complaint was labeled "Agency No. 2010-0034-HQ." Pl.'s Opp'n at 1.

[5] The defendant initially challenged the plaintiff's claims for failure to exhaust his administrative remedies and timely file this action. See Def.'s Mem. at 4-9. However, the defendant now concedes that the plaintiff has exhausted his remedies and timely filed claims insofar as they relate to his November 2009 non-selection and March 2010 reassignment. Def.'s Reply at 1.

## II. STANDARD OF REVIEW[6]

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff receives the "benefit of all inferences that can be derived from the facts alleged." Am. Nat'l Ins. Co. v. FDIC, 642 F. 3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  But suggesting a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement. Iqbal, 556 U.S. at 678.  Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679.

## III. ANALYSIS

Because the defendant now concedes that the plaintiff's claims relating to his November 2009 non-selection would survive a motion to dismiss, Def.'s Reply at 1-2, 4, the remaining issues are (1) whether the plaintiff may rely on certain "background evidence" in support of his timely claims, and (2) whether the plaintiff has sufficiently alleged claims of discrimination and retaliation arising out of his March 2010 reassignment.  The Court will address these issues in turn.

---

[6] "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  Here, the Court deems it both unnecessary and premature to consider matters outside the pleadings, and accordingly does not treat the defendant's 12(b)(6) motion as one for summary judgment.

**A.      The Plaintiff's Use of "Background Evidence" in Support of His Timely Claims**

The plaintiff alleges facts about time-barred discriminatory acts "as background evidence of the discriminatory and retaliatory conduct to which [he] has been subjected during his employment with the [EPA]." Pl.'s Opp'n at 1. Specifically, he highlights his non-selection for a "GS-14 vacancy within the [Exposure Assessment Branch]" in 2002, the "refus[al] to implement the results of a [favorable] desk audit" in 2006, and "unwarranted written reprimands" issued sometime between 2006 and 2009, Compl. ¶¶ 19-28, as background evidence in support of his claim based on the March 2010 reassignment.

The defendant argues that the plaintiff's use of time-barred acts "substantially recasts the [c]omplaint" because "[t]he 'background' noise . . . all but drowns out the relatively few notes that [the p]laintiff claims were timely and properly exhausted." Def.'s Reply at 2. The defendant thus requests that the "motion to dismiss . . . be granted as to all claims for relief other than [the] claim[s] of discrimination and retaliation" in the November 2009 non-selection and March 2010 reassignment, id. at 1, and that the plaintiff be instructed to submit "a more particularized, more definite statement of how the 'background' allegations may be relevant to [the] timely, exhausted claim[s]." Id. at 2 n.2.

The Court agrees with the defendant's position. As the plaintiff appears to concede, he may not assert independent claims of discrimination based on discrete acts predating the November 2009 non-selection because such claims were not properly exhausted or timely filed. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (stating that plaintiffs generally must file separate and timely claims for each "discrete act" of discrimination or retaliation). And while plaintiffs can, in some circumstances, "use prior acts as background evidence in support of a timely claim," id., the plaintiff's complaint here fails to explain

6

sufficiently the connection between the time-barred allegations and his timely claims. Thus, the Court will grant the defendant's motion to dismiss all independent claims of discrimination and retaliation except those claims relating to the November 2009 non-selection and March 2010 reassignment. The Court will also order the plaintiff to amend his complaint to provide a more definite statement explaining the relevance of each time-barred act to his timely claims.

**B.      Sufficiency of the Plaintiff's Claims Regarding the March 2010 Reassignment**

The defendant also moves to dismiss the plaintiff's discrimination and retaliation claims arising out of the March 2010 reassignment "for failure to establish an adverse action." Def.'s Mem. at 10. Although the defendant lumps the two claims together, the Court will address the plaintiff's discrimination and retaliation claims separately.

**1.      The Plaintiff's Age and Sex Discrimination Claims**

As relevant to this action, "the two essential elements" of an employment discrimination claim under the ADEA and Title VII are that "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's" age or sex. Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). An adverse action in the ADEA or Title VII discrimination context is an "action[] [or] harm[]" that "relate[s] to employment or occur[s] at the workplace." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). Reassignment of duties may be an adverse action when the "plaintiff has suffered [an] objectively tangible harm," Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999), such as "significantly diminished material responsibilities," Baloch v. Norton, 355 F. Supp. 2d 246, 256 (D.D.C. 2005) (quoting Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 886 (6th Cir. 1996)) (citations omitted). "[D]emotion evidenced by a decrease in wage or salary, less distinguished title, material loss of benefits, or other indices that might be unique to a particular situation" may show a significant change in "material

7

responsibilities." Id. at 256-57.  Even when reassignment does not result in wage loss it may be an adverse action if "[w]ithdrawing . . . supervisory duties" leaves an employee with "significantly different—and diminished—supervisory and programmatic responsibilities." Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) (internal quotation marks and citation omitted).  But reassignment without wage loss that "d[oes] not constitute qualitatively inferior work requiring any less skill or knowledge" generally is not an adverse action.  Kempthorne, 550 F.3d at 1197.

      In moving to dismiss the plaintiff's discrimination claims based on the March 2010 reassignment, the defendant argues that reassignment of the plaintiff's "coordinating and scheduling task[s]" did not constitute an adverse action because it did "not significantly impact[]" the plaintiff's professional responsibilities, Def.'s Mem. at 11, or otherwise "impact his job in any material way," Def.'s Reply at 3.  However, according to the complaint, the March 2010 reassignment caused the plaintiff to lose his status as a "division representative for the weekly meetings" who "tracked and coordinated all of the work and assignments for the division."  Compl. ¶ 37.  The plaintiff contends also that he lost the seemingly supervisory duty of "assigning the [High Protection Volume] cases to the environmental fate assessors within the [Branch]."  Id.  The plaintiff claims that these duties were characteristic of the "GS-14 level," id. ¶ 38, which is a grade above his current GS-13 level.  Construed liberally, these allegations represent that the March 2010 reassignment resulted in diminished supervisory responsibilities for the plaintiff.  The Court therefore finds that the plaintiff has pleaded sufficient facts to satisfy the "adverse action" element of his ADEA and Title VII discrimination claims, and denies the defendant's motion to dismiss these claims.

### 2. The Plaintiff's Retaliation Claim

An employer may not retaliate against an employee for engaging in an "activity protected by [the ADEA and] Title VII." Montgomery v. Chao, 546 F.3d 703, 706 (D.C. Cir. 2008). To establish a retaliation claim, a plaintiff must show that he suffered "(i) a materially adverse action (ii) because he . . . brought or threatened to bring a discrimination claim." Kempthorne, 550 F.3d at 1198. The discrimination and retaliation provisions "are not coterminous," Steele v. Schafer, 535 F.3d 689, 695 (D.C. Cir. 2007) (internal citation omitted), and "some actions not sufficiently adverse under a disparate treatment theory may sustain a retaliation claim," Manuel v. Potter, 685 F. Supp. 2d 46, 66 (D.D.C. 2010).

An employment action is "materially adverse" in the retaliation claim context where it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68 (internal quotation marks omitted). "A 'lateral transfer'—that is, a transfer involving 'no diminution in pay and benefits'—may qualify as a materially adverse employment action if it 'result[s] in materially adverse consequences affecting the terms, conditions, or privileges of the plaintiff's employment.'" Geleta v. Gray, 645 F.3d 408, 411 (D.C. Cir. 2011) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 607 (D.C. Cir. 2010)). Thus, a reassignment of duties may be materially adverse if it places the employee in a position with "less responsibility and fewer opportunities for compensation and advancement," Caudle v. District of Columbia, 804 F. Supp. 2d 32, 43 (D.D.C. 2011), or results in the "loss of supervisory responsibilities," Geleta, 645 F.3d at 412.

The plaintiff alleges that he has been trying to advance to a GS-14 level position for a decade. Compl. ¶¶ 19-38. Since 1999, he purportedly has been "developing fate assessments," which he claims is work "characteristic of the GS-14 level." Id. ¶¶ 25, 37. In November 2009,

the plaintiff was again not selected for a GS-14 level position. Pl.'s Opp. at 2. Then, in February 2010, the plaintiff filed his second administrative complaint regarding alleged discrimination and retaliation. Id. at 1. Approximately one month later, the defendant reassigned the plaintiff's purportedly "high profile" GS-14 level duty to another employee. Compl. ¶ 36. The plaintiff alleges the March 2010 reassignment was a materially adverse action intended to "defeat his claim that he is entitled to promotion to a position at the GS-14 level." Id. ¶ 38. The defendant, on the other hand, contends that the March 2010 reassignment caused no more than "trivial harm[]." Def.'s Mem. at 10-11.

The Court finds that the plaintiff's allegations plausibly show, at the motion to dismiss stage, that the March 2010 reassignment could "have dissuaded a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 68. As discussed above in the context of the plaintiff's discrimination claims, the plaintiff's allegations indicate that the March 2010 reassignment resulted in the "loss of supervisory responsibilities" for the plaintiff. Geleta, 645 F.3d at 412. Furthermore, because "[t]he issue of whether a particular employment action is materially adverse is fact intensive and depends [on] the circumstances of the particular case," Hunter v. D.C. Child & Family Servs. Agency, 710 F. Supp. 2d 152, 159 (D.D.C. 2010); see also Czekalski, 475 F.3d at 356 ("Whether a particular reassignment of duties constitutes an adverse action . . . is generally a jury question. The court may not take that question away from the jury if a reasonable juror could find that the reassignment left the plaintiff with significantly diminished responsibilities." (internal citation omitted)), discovery is necessary before the Court could possibly assess the material adversity of the March 2010 reassignment. The Court must therefore deny the defendant's motion to dismiss the plaintiff's retaliation claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the defendant's motion to dismiss.  Specifically, the Court grants the motion as to all of the plaintiff's claims of discrimination and retaliation arising out of events preceding his November 2009 non-selection, but otherwise denies the motion.  The Court further directs the plaintiff to amend his complaint to provide a more definite statement concerning how each time-barred act he alleges in his current complaint relates to his timely claims.

**SO ORDERED** this 15th day of October, 2012.[7]

REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.