## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ANDREW MAMANTOV,

              Plaintiff,

       v.

GINA McCARTHY, Administrator,
United States Environmental Protection Agency,

             Defendant.
_____)

           Civil Action No. 12-00407 (RBW)

### MEMORANDUM OPINION

The plaintiff claims that he was denied an upgraded position with the Environmental Protection Agency due to his age and sex in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623 (2006), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16 (2006).  Amended Complaint ("Am. Compl."), ECF No. 13 ¶¶ 57–59, 67–69.  The plaintiff also claims that the defendant retaliated against him by refusing to select him for the upgraded position and by reassigning a work function from him to another employee after he lodged two discrimination complaints, in violation of Title VII, 42 U.S.C. § 2000e-3.  Am. Compl. ¶¶ 60–66, 70–73.  Currently pending before the Court is the defendant's Motion for Summary Judgment, ECF No. 36.  Upon consideration of the parties' submissions, the Court concludes that the defendant's motion must be granted in its entirety.[1]

_____

[1] In addition to the Amended Complaint, the defendant's Motion for Summary Judgment, and the exhibits attached to the motion ("Def. Exs."), the Court considered the following submissions in rendering its decision: (1) the Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Def.'s Mem."); (2) the Defendant's Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s Facts"); (3) the Plaintiff's Memorandum of Points and Authorities in Opposition to [the] Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") and the attached exhibits ("Pl. Exs."); (4) the Plaintiff's Statement of Material Facts in

(continued . . . )

# I.   BACKGROUND

## A.  The Plaintiff's Non-Selection for the GS-14 Position

The following facts are undisputed except where otherwise noted by the Court.  The plaintiff, a male employee of the Environmental Protection Agency ("EPA"), who was sixty-seven years old when he initiated this suit in 2012, was at all relevant times a GS-13 chemist in the EPA's Exposure Assessment Branch ("EAB").  Def.'s Facts ¶¶ 1, 2; Pl.'s Facts ¶¶ 1, 2.  The EAB is comprised of two subgroups of employees: (1) exposure assessors, and (2) fate and transport assessors, and employees of the EAB are either fate assessors or exposure assessors. Def.'s Facts ¶¶ 4, 5; Pl.'s Facts ¶¶ 4, 5.  "Exposure assessment is [] concerned with sources of chemicals[,] chemical releases into the environment[,] and, with respect to human exposure, how and how often people come into contact with particular chemicals."  Def.'s Facts ¶ 23; Pl.'s Facts ¶ 23.  In contrast, "[a]nalysis of the degradation of chemicals in waterways, for example, is fate assessment, which feeds or is a component of the broader exposure assessment modeling." Def.'s Facts ¶ 24; Pl.'s ¶ Facts 24.  The plaintiff is a fate assessor whose "primary duties and responsibilities are to assess chemicals, new and existing, for abiotic fate," not an exposure assessor.  Def.'s Facts ¶¶ 15, 16, 18; Pl.'s Facts ¶¶ 15, 16, 18.  And, the plaintiff's EAB colleagues "regard him as a fate assessor, not an exposure assessor."  Def.'s Facts ¶ 17; Pl.'s Facts ¶ 17.  The plaintiff also served as a "work assignment manager," which involved "coordinating, tracking, and assigning chemicals for contractors to review."  Pl.'s Facts ¶ 30.

The plaintiff's first-line supervisor since 1997 has been Mary C. Fehrenbacher.  Def.'s Facts ¶ 3; Pl.'s Facts ¶ 3.  Around September 2009, Fehrenbacher informed her staff at a branch

---

( . . . continued )

Dispute and in Response to [the] Defendant's Statement of Material Facts as to Which There Is No Genuine Dispute ("Pl.'s Facts"); and (5) the Defendant's Reply to [the] Plaintiff's Opposition to [the] Defendant's Motion for Summary Judgment ("Def.'s Reply") and the attached exhibits ("Def. Reply Exs.").

meeting that she had authority to hire a GS-14 exposure assessor, Def.'s Facts ¶ 10; Pl.'s Facts ¶ 10, and on September 14, 2009, she emailed the EAB staff to inform them of the open GS-14 position, Def.'s Facts ¶ 12 & Def. Ex. 11; Pl.'s Facts ¶ 12. The email's subject line read "Heads' Up – GS-14 Exposure Assessor announcement," and the body of the email stated that the "GS-14 Exposure Assessor announcement should be posted soon on USAJOBS." Def.'s Facts ¶ 12 & Def. Ex. 11; Pl.'s Facts ¶ 12. Then, in September 2009, the EPA issued a job announcement, identified as number RTP-MP-2009-0597, to fill a GS-14-level position titled "Interdisciplinary Environmental Engineer/Physical Scientist." Def.'s Facts ¶ 8 & Def. Ex. 8; Pl.'s Facts ¶ 8. Fehrenbacher was the selecting official for this GS-14 position. Def.'s Facts ¶ 14; Pl.'s Facts ¶ 14.

The plaintiff applied for the GS-14 position, and based on his application, including his answers to the application questionnaire, he was "certified" (i.e., referred) to Fehrenbacher for consideration. Def.'s Facts ¶¶ 25, 26; Pl.'s Facts ¶¶ 25, 26. The only other employee whose application was referred to Fehrenbacher for consideration was Christina Cinalli. Def.'s Facts ¶¶ 27, 28; Pl.'s Facts ¶¶ 28, 29. Cinalli, who is younger than the plaintiff, began her career with the EPA in 1987 as an exposure assessor. Def.'s Facts ¶ 21; Pl.'s Facts ¶ 21. At the time of her application, Cinalli was an EAB exposure assessor, and she is regarded as an exposure assessor by her EAB colleagues. Def.'s Facts ¶¶ 19, 20; Pl.'s Facts ¶¶ 19, 20. Using a weights and screenouts report, the plaintiff's application was assigned a score of 92.02, while Cinalli's application received a score of 94.5.[2] Pl. Ex. 16 (Anthony Dep.) at 36:4–20. Fehrenbacher selected Cinalli for the GS-14 position in November 2009. Def.'s Facts ¶ 29; Pl.'s Facts ¶ 29.

---

[2] A weights and screenouts report is a "report that records . . . the weights assigned to questions in the questionnaire" completed by applicants. Pl. Ex. 16 (Anthony Dep.) at 20:12–21:4.

The plaintiff "dispute[s] any insinuation that the duties and responsibilities of [the two EAB employee subgroups, i.e., exposure assessors and fate assessors] do not overlap, or that a fate assessor will not also conduct exposure assessments."  Pl.'s Facts ¶ 5 (further stating that "[b]oth subgroups are required to make a complete Exposure Assessment, hence the name Exposure Assessment Branch") (internal quotation marks and citations omitted); see also Pl.'s Facts ¶ 22 ("Both fate and exposure assessment involve chemistry, and so while maybe different, they are not 'very different.'").  The plaintiff contends that the job announcement for the GS-14 position "was for someone with experience both in exposure assessment and fate and transport assessment."  Pl.'s Facts ¶¶ 4–6.  The plaintiff therefore disputes that the GS-14 position "was solely for an [e]xposure [a]ssessor."  Pl.'s Facts ¶ 9; see Pl.'s Facts ¶ 11 (stating that the job analysis was written to indicate that the position was for persons experienced with fate assessment" and that "a version of the Weights and Screenouts also indicated that fate assessment was a major duty of the position") (citing Pl. Exs. 5 & 6)).  The plaintiff does not dispute that he is identified as a fate assessor in the EAB.  Def.'s Facts ¶¶ 15, 16, 18; Pl.'s Facts ¶¶ 15, 16, 18.  Nonetheless, he represents that he also has "some exposure assessment" experience as a result of having conducted "thousands of exposure assessments," Pl.'s Facts ¶¶ 4, 5, and by virtue of serving as a "FOCUS group representative and back-up FOCUS group representative," "an interdisciplinary group of scientists" that "review the hazards, chemistry, exposures assessment[,] and engineering[,] and [who] make some preliminary decisions about new chemicals" at meetings to which "the EAB sends exposure assessors," Pl.'s Facts ¶ 15 (internal quotation marks and citation omitted).

**B.  The Plaintiff's Retaliation Allegations**

In July 2006, three years before the vacancy at issue here was announced, the plaintiff "formally requested that the Human Resources Office conduct a desk audit, because of his belief that his position warranted upgrading."  Pl. Ex. 13 at Mamantov–000279.  Classification specialists who conducted the desk audit "determined that [the plaintiff's] position supports the classification of Chemist, GS-1320-14" and that the plaintiff's supervisor had been notified of this determination.  Id. at Mamantov–000268.  At some time around November 2006, Fehrenbacher, who did not provide input for the July 2006 desk audit, asked for a meeting to address her concern "that in the absence of her input as [the plaintiff's] immediate supervisor regarding his work assignments, the desk audit findings could not be accurate, because the findings are based only on information obtained from the incumbent."  Pl. Ex. 14 at Mamantov–000113.  Fehrenbacher then "submitted a detailed package regarding her views and assessments of [the plaintiff's] work assignments and products."  Id. at Mamantov–000114.  Thereafter, upon further review, the EPA's human resources office found "no supporting information for changing [its] initial evaluation that [the plaintiff's] position supports classification at the GS-14 grade level."  Id.  In March 2007, the acting director of the "Headquarter Operations Division" reviewed the desk audit's results and stated in a memorandum to Fehrenbacher that she was "in concurrence with the preliminary and final findings submitted by the classifiers that determine that [the plaintiff was] performing work supportable at the GS–14 level.  Specifically, the work he conduct[ed] developing fate assessments [was] characteristic of the GS–14 level."  Pl. Ex. 15 at EPA0000469.  However, the plaintiff's position was never upgraded.  See Pl.'s Opp'n at 5.  In July 2009, more two years after the desk audit was completed, the plaintiff "filed an administrative complaint of discrimination with the [EPA's Equal Employment Opportunity]

office regarding the failure to implement the classification specialists' recommendations" (the "July 2009 EEO complaint").  Pl.'s Opp'n at 5.

As support for his retaliation claim, the plaintiff provides "a version of [a weights and screenouts questionnaire]" for the GS-14 position, which asked applicants to "[c]hoose the response which best describes your training and experience in applying models of the environmental fate and transport of pesticides or other environmental contaminants."  Pl. Ex. 6 at 5.  The plaintiff provides another version of a weights and screenouts questionnaire, "signed and dated . . . [August 31, 2009, in which] the question regarding experience with environmental fate and transport is no longer included, and the numerical value assigned to questions regarding exposure assessment were doubled."  Pl.'s Opp'n at 6 & Pl. Ex. 8.  According to the plaintiff, "[t]his occurred just one month after" he filed his July 2009 EEO complaint.  Pl.'s Opp'n at 6–7.  The defendant disputes the plaintiff's characterization of the two versions of the weights and screenouts questionnaire, noting that plaintiff's Exhibit 6 is an "undated and unsigned draft" of the weights and screenouts questionnaire, and representing that any changes between the two versions of the questionnaire reflected Fehrenbacher's intention to hire an exposure assessor. See Def.'s Reply at 12 (citing Def. Ex. 1 (Fehrenbacher Dep.) at 94:11–97:8) (testimony regarding the job announcement for the GS-14 position)).  The plaintiff subsequently applied for and was denied the GS-14 position.  See supra Part I.A.

The plaintiff filed a second administrative complaint in February 2010 after he was not selected for the GS-14 position (the "February 2010 EEO complaint").  Pl.'s Opp'n at 18.  The defendant states that in March 2010, Fehrenbacher assigned an "administrative tracking task" that had been performed by the plaintiff to another employee.  Def.'s Facts ¶ 30.  According to the defendant, this was an "administerial [sic] task that did not require any technical knowledge

or expertise," and that the reassignment of this task did not affect the plaintiff's core duties and responsibilities. <u>Id.</u> ¶¶ 31–32, 34.  The plaintiff, on the other hand, describes the task as "assigning [] contactor's reports [of chemicals]" to "other assessors within the [EAB] to review the contractors' work," which required "technical knowledge of the chemicals that were reviewed as well as knowledge of the assessors' experience with the various chemicals."  Pl.'s Facts ¶¶ 30–32.  Thus, "if a chemical came across [the plaintiff's] desk for review and a certain assessor had previous experience with the chemical, [the plaintiff] would use his knowledge and judgment to adjust the assignment process and assign the chemical to the experienced assessor." <u>Id.</u>  The plaintiff adds that he was relieved of this task and it was reassigned to the EAB's associate chief, who was a female GS-14-level employee, and later to a younger, male, GS-15-level employee.  <u>Id.</u> ¶ 34.  The parties agree that the task required only fifteen to thirty minutes quarterly, and that the reassignment did not affect the plaintiff's grade, salary, or benefits as a GS-13 employee.  Def.'s Facts ¶¶ 33, 35; Pl.'s Facts ¶¶ 33, 35.[3]

## II.   STANDARD OF REVIEW

On a motion for summary judgment, Federal Rule of Civil Procedure 56 requires the Court to find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment must be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 323 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248

---

[3] For ease of reference, the reassigned task will be referred to in this memorandum opinion as the "contractor tracking task."

(1986).  And, "a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Arrington v. United States</u>, 473 F.3d 329, 333 (quoting <u>Anderson</u>, 477 U.S. at 248).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  In opposing a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Accordingly, the nonmoving party may not rely on "the mere allegations or denials of his pleadings" but "must set forth specific facts showing that there is a genuine issue for trial," <u>Anderson</u>, 477 U.S. at 248 (internal quotation marks omitted).  In ruling on a motion for summary judgment, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000) (internal citations omitted); <u>see also</u> <u>Barnett v. PA Consulting Grp., Inc.</u>, 715 F.3d 354, 358 (D.C. Cir. 2013) (stating that weighing the evidence and making credibility determinations "are jury functions, not those of a judge at summary judgment").

### III.     ANALYSIS

#### A.     The Plaintiff's Age and Sex Discrimination Claims

The ADEA makes it unlawful for an employer "to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623 (a)(1).  Likewise, Title VII of the Civil Rights Act of 1964 protects employees from discrimination on the basis of sex.  42 U.S.C. § 2000e-16(a).  In the absence of direct evidence of discrimination, the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>,

411 U.S. 792 (1973), applies in assessing the sustainability of the plaintiff's discrimination

claims. Accordingly, in this non-selection case, the plaintiff must establish that: (1) he belongs

to a protected class, (2) he applied for and was qualified for the available position, (3) despite his

qualifications, he was not selected by the defendant for the position, and (4) either the position

was filled or the position remained open and the employer continued to seek applicants. Reshard

v. Peters, 579 F. Supp. 2d 57, 65 (D.D.C. 2008) (Walton, J.) (citing Jackson v. Gonzalez, 495

F.3d 703, 707 (D.C. Cir. 2007)). Once this prima facie case of discrimination is established, the

defendant must identify a legitimate nondiscriminatory reason for the plaintiff's non-selection.

McDonnell Douglas, 411 U.S. at 802; Jackson v. Gonzalez, 496 F.3d 703, 707 (D.C. Cir. 2007).

If the defendant meets this burden of production, the plaintiff must then show that the legitimate

reason offered by the defendant was a pretext for discrimination. Downing v. Tapella, 729 F.

Supp. 2d 88, 93 (D.D.C. 2010).

However, where the defendant proffers a legitimate, nondiscriminatory reason for the

adverse employment action, this Circuit has held that "the McDonnell Douglas inquiry distills

into one question: [whether] the employee produced sufficient evidence for a reasonable jury to

find that the employer's asserted non-discriminatory reason was not the actual reason and that

the employer intentionally discriminated against the employee." Evans v. Sebelius, 716 F.3d

617, 620 (D.C. Cir. 2013) (quoting Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494

(D.C. Cir. 2008) (internal quotation marks omitted). Thus, "the prima-facie-case aspect of

McDonnell Douglas is irrelevant when an employer has asserted a legitimate, nondiscriminatory

reason for its decision." Adeyemi v. District of Columbia, 525 F.3d 1222, 1226) (D.C. Cir.

2008). And, "[c]onsistent with the courts' reluctance to become involved in the

micromanagement of every day employment decisions, the question before the [C]ourt is limited

9

to whether [the plaintiff has] produced sufficient evidence of [] discrimination, not whether he was treated fairly or otherwise entitled to promotion." Forman v. Small, 271 F.3d 285, 291 (D.C. Cir. 2001) (internal citations omitted).

The defendant's burden in stating a legitimate, nondiscriminatory reason for refusing to promote a plaintiff is one of production; accordingly, the defendant "need not persuade the court that [the adverse employment action] was actually motivated by the proffered reasons." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). Here, the defendant asserts that it did not select the plaintiff for the GS-14 position because the job vacancy sought an exposure assessor, and the person selected for the position (Cinalli) was an exposure assessor with the EPA since 1987, while the plaintiff is "a self-proclaimed abiotic fate assessor, not an exposure assessor." Def.'s Mem. at 8. The defendant's stated reason for the plaintiff's non-selection boils down to a simple proposition: Cinalli was selected because she was more qualified than the plaintiff for the available position. Fehrenbacher, the selecting official for the position, stated that as Cinalli's and the plaintiff's supervisor, she was "very familiar with their knowledge, skills, and abilities," and that based on this knowledge and her review of their applications, "[Cinalli] was the best qualified for the position." Def. Ex. 4 (Fehrenbacher Aff.) at 4. The Court therefore concludes that the defendant has met its burden of production by producing evidence of a legitimate, nondiscriminatory reason for failing to select the plaintiff for the GS-14 position. See Holcomb v. Powell, 433 F.3d 889, 896 (D.C. Cir. 2006) (selecting official's affidavit stating that the selectee was the "best applicant" was sufficient evidence of the defendant's legitimate, nondiscriminatory reason for failing to select the plaintiff); Raymond v. Architect of Capitol, 49 F. Supp. 3d 99, 110–11 (D.D.C. 2014) (the defendant's stated

explanation that the selectee "was simply more qualified than" the plaintiff was a legitimate, nondiscriminatory reason).

The plaintiff bears the burden to point to evidence sufficient for a reasonable jury to find that the defendant's reason for selecting Cinalli—that Cinalli was most qualified for the position—was a pretext for discrimination.  Brady, 520 F.3d at 494.  The plaintiff may challenge the defendant's stated reason "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2005) (citations omitted).  But, "when an employer says it made a . . . promotion decision based on the relative qualifications of the candidates, a plaintiff can directly challenge that qualifications-based explanation only if the plaintiff was 'significantly better qualified for the job' than [the person] ultimately chosen.  The qualifications gap must be 'great enough to be inherently indicative of discrimination.'"  Adeyemi, 525 F.3d at 1226 (citations omitted); see also Warner v. Vance-Cooks, 956 F. Supp. 2d 129, 152 (D.D.C. 2013) ("[T]he plaintiff must be substantially more qualified than the successful candidate to perform the duties listed in the vacancy announcement, and the non-selected candidate must have a stark superiority of credentials.") (internal quotation marks and citation omitted)).

The plaintiff's response to the defendant's proffered explanation is the following: Because the distinction between exposure assessors and fate assessors in the EAB is not binary, and because the available position was not limited to exposure assessors, he was therefore as qualified for the GS-14 position as Cinalli, despite being a fate assessor, and as a result, the defendant's proffered reason was a pretext for discrimination.  See generally Pl.'s Opp'n.  The undisputed facts do not support the plaintiff's contention.  The plaintiff does not dispute that the

11

EAB is comprised of "either fate assessors or consumer exposure assessors."  Pl.'s Facts ¶ 5 (emphasis added).  In September 2009, prior to the publication of the job announcement, Fehrenbacher informed the EAB staff in an email that an announcement for a "GS-14 Exposure Assessor" position would be forthcoming.  Def.'s Facts ¶ 12 & Def. Ex. 11; Pl.'s Facts ¶ 12. Two of the plaintiff's colleagues, who have known him for over 30 years, testified during their depositions that the plaintiff's expertise is as a fate assessor and that his role at the EAB was always in fate assessment.  Def.'s Mem. at 11 (citing Def. Ex. 5 (Lynch Dep.) at 44:3–10; 48:18– 49:17; Def. Ex. 6 (Boethling Dep.) at 14:20–15:16; 42:14–43:4).  Moreover, the plaintiff describes himself as a fate assessor.  Pl.'s Facts ¶ 15.  In contrast, the plaintiff admits that Cinalli is an experienced exposure assessor, and that is how she is regarded by her EAB colleagues. Pl.'s Facts ¶¶ 19, 20.  Based upon these undisputed facts, the Court concludes that the dichotomy between fate assessors and exposure assessors in the EAB was salient, that the vacancy was for an exposure assessor, and that as an experienced exposure assessor, Cinalli was more qualified for the position than the plaintiff.

The plaintiff asserts that he has some experience in exposure assessment.  See Pl.'s Facts ¶ 5 (the plaintiff "has done thousands of exposure assessments"); ¶ 15 (describing the plaintiff's participation in FOCUS group meetings, to which "[t]he EAB sends exposure assessors").  In addition, the plaintiff's and Cinalli's scores based on their responses to the application questionnaire were close.  See Pl. Ex. 16 (Anthony Dep.) at 36:4–12.  Even when this evidence is viewed in the light most favorable to the plaintiff, and all reasonable inferences from this evidence are drawn in favor of the plaintiff, the Court concludes that the record suggests, at best, that the choice between Cinalli and the plaintiff was "a difficult decision between two qualified candidates."  Stewart v. Ashcroft, 352 F.3d 422, 430 (D.C. Cir. 2003).  And, as it is not the

province of this Court to "reexamine[] an entity's business decisions" in a Title VII case,

Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (internal quotation marks and citation

omitted), the Court concludes that the plaintiff has failed to establish that the defendant's

selection of Cinalli as the more qualified candidate for the GS-14 position was a pretext for

discrimination, see Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1294 ("In a close case, a reasonable

juror would usually assume that the employer is more capable of assessing the significance of

small differences in the qualifications of the candidates, or that the employer simply made a

judgment call.").  For these reasons, the Court must grant the defendant's motion for summary

judgment as to the plaintiff's age and sex discrimination claims.

### B.      The Plaintiff's Retaliation Claims

        Claims of retaliation under Title VII are governed by the same McDonnell-Douglas

burden-shifting analysis applicable to discrimination claims.  Carney v. Am. Univ., 151 F.3d

1090, 1094 (D.C. Cir. 1998).  Thus, the plaintiff must first establish a prima facie case of

retaliation by showing that: (1) he engaged in statutorily protected activity, (2) that he suffered a

material adverse employment action by his employer, and (3) the adverse employment action

was causally related to the plaintiff's statutorily protected activity.  Wiley v. Glassman, 511 F.3d

151, 155 (D.C. Cir. 2007); Halcomb v. Office of Senate Sergeant-at-Arms of U.S. Senate, 563 F.

Supp. 2d 228, 245 (D.D.C. 2008) (Walton, J.).  A materially adverse employment action is one

that "well might have 'dissuaded a reasonable worker from making or supporting a charge of

discrimination.'"  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting

Rochon v. Gonzalez, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  Importantly, this "standard is tied

to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII

complaint."  Id. at 69.  Once the plaintiff has established the prima facie case, the burden shifts to

the defendant to state a legitimate, non-retaliatory reason for the alleged adverse employment

action.  Cones v. Shalala, 199 F.3d 512, 520 (D.C. Cir. 2000).  If the defendant states such a

reason, the burden shifts back to the plaintiff to show that the defendant's reason was a mere

pretext for retaliation.  Id.

The plaintiff alleges two retaliatory acts: (1) that the defendant's selection of Cinalli

instead of him for the GS-14 position was in retaliation for his July 2009 EEO complaint

regarding the 2006 desk audit; and (2) that the March 2010 reassignment of the contractor

tracking task was in retaliation for his February 2010 EEO complaint regarding his November

2009 non-selection for the GS-14 position.  See Pl.'s Opp'n at 18–22.  The parties do not dispute

that the two EEO complaints constitute "statutorily protected activity" sufficient to satisfy the

first element of the plaintiff's prima facie case.  See Richardson v. Gutierrez, 477 F. Supp. 2d,

22, 27 ("It is well settled that Title VII protects informal, as well as formal, complaints of

discrimination.")  As to the remaining elements of the retaliation analysis, the Court will address

the plaintiff's separate factual predicates in turn.

### 1.  Non-Selection for the GS-14 Position

As there is no dispute that the July 2009 EEO complaint constitutes statutorily protected

activity, the Court turns to the two remaining elements of a prima facie case of retaliation.  There

is no question that the second element is satisfied because the defendant's ultimate non-selection

of the plaintiff for the GS-14 position constitutes a materially adverse employment action.  See

Hyson v. Architect of the Capitol, 802 F. Supp. 2d 84, 98 (D.D.C. 2011) (non-selection of an

employee to a higher position constitutes an adverse employment action).  And, as to the third

element, a period of four months passed between the plaintiff's July 2009 EEO complaint and

Cinalli's selection for the GS-14 position.  See Def.'s Facts ¶ 29; Pl.'s Facts ¶ 29 (Fehrenbacher

selected Cinalli for the GS-14 position on November 20, 2009).  The plaintiff may show a causal

relationship between the protected activity and the adverse employment action by establishing that the adverse employment action occurred soon after the protected activity. Mitchell v. Baldrige, 759 F.2d 80, 85 (D.C. Cir. 1985). Courts in this Circuit have generally accepted as adequate intervals "of a few days up to a few months," Payne v. Salazar, 899 F. Supp. 2d 42, 58 (D.D.C. 2012); see also Dudley v. Wash. Metro. Area Transit Auth., 924 F. Supp. 2d 141, 179 (D.D.C. 2013) (six month interval is "the outer edge of acceptable temporal proximity"). The Court therefore concludes that the plaintiff has established a prima facie case of retaliation. The Court further finds that the defendant has provided a legitimate, non-retaliatory reason for selecting Cinalli instead of the plaintiff, i.e., that the vacancy was for an exposure assessor, and Cinalli was selected because she was more qualified for that position than the plaintiff, who was a fate assessor. Def.'s Mem. at 16 (citing Def. Ex. 1 (Fehrenbacher Aff.) at 5, 6).

The burden therefore returns to the plaintiff to identify sufficient evidence from which a jury could infer that the defendant's stated reason was a pretext for retaliation. The plaintiff argues that when Fehrenbacher became aware of his July 2009 EEO complaint, the qualifications for the GS-14 position were changed to exclude fate assessor qualifications. See Pl.'s Opp'n at 19. The Court addressed analogous allegations in Halcomb, where the plaintiff alleged that the defendant altered the qualifications for a vacancy so that she would not be qualified for promotion to that position, in retaliation for protected activity. Halcomb, 563 F. Supp. 2d at 248–49. There, the Court found that the plaintiff's allegations regarding the changed qualifications, without more, were insufficient to establish that the defendant's claim that the plaintiff was not qualified for the position was a pretext. Id. at 249. Here, the plaintiff has proffered some evidence in support of his claim.

First, the plaintiff asserts that Fehrenbacher was aware of the July 2009 EEO complaint, relying on Fehrenbacher's deposition testimony.  Pl.'s Opp'n at 19 (citing Pl. Ex. 10 (Fehrenbacher Dep.) at 67–68).  The Court notes, however, that the testimony cited by the plaintiff is somewhat ambiguous regarding when exactly Fehrenbacher became aware of the EEO complaint.  The testimony was as follows:

> Q. When did you make the decision to select Ms. Cinalli for this G.S. 14 level position that we are talking about?
> **A. I don't remember the specific date, but I believe it was in either November or December of 2009.**
> Q. You are aware that Mr. Mamantov has filed a claim of discrimination arising out of a desk audit issue.  Is that correct?
> **A. Yes.**
> Q. When did you become aware that he filed that claim of discrimination in regard to that issue.
> **A. I don't remember the exact time.  I don't recall if it was in 2008 or 2009, but I was aware of it at the time.**

Pl. Ex. 10 (Fehrenbacher Dep.) at 67:18–68:11.  While the testimony could be more concrete as to when Fehrenbacher became aware of the EEO complaint, at the summary judgment stage, the Court must draw all reasonable inferences in favor of the nonmoving party.  See Reeves, 530 U.S. at 150.  Doing so here, the Court reads the cited testimony as stating that Fehrenbacher was aware of the EEO complaint "at the time" it was "filed."

Next, the plaintiff asserts that before his July 2009 EEO complaint, the versions of the job analysis and weights and screenouts questionnaire for the GS-14 position were "geared towards fate assessment."  Pl.'s Opp'n at 19 (citing Pl. Ex. 5 (job analysis signed and dated May 11, 2009) & Pl. Ex. 6 (unsigned and undated weights and screenouts questionnaire)).  The plaintiff has also produced evidence that "the Weights and Measures dated 8/31/09[] [Pl. Ex. 8] no longer asked questions regarding fate and transport assessment."  Id.

The defendant counters that the plaintiff has failed to provide any evidence that Fehrenbacher—the selecting official for the GS-14 position—had any involvement in preparing the alleged earlier version of the weights and screenouts questionnaire, or that she intended at any point to include fate assessment experience in the job qualifications list, and that in any event, the earlier version of the weights and screenouts questionnaire is an unsigned and undated draft.  Def.'s Reply at 12.  Further, the defendant argues that the plaintiff has failed to establish that the earlier version of the job analysis (Pl. Ex. 5), which he also relies on to suggest that the job qualifications were changed in retaliation for his July 2009 EEO complaint, was prepared for the specific GS-14 position at issue.  See Def.'s Reply at 11; Def.'s Reply Ex. 6 (Locke Dep.) at 73:7–13; 75:15–7; 75:18–76:1.  The Court agrees.  Even when viewed in the light most favorable to the plaintiff, the evidence merely establishes that the job analysis and weights and screenouts questionnaire were drafted in such a manner as to emphasize experience in exposure assessment, which as the Court has already concluded was consistent with the defendant's search for an exposure assessor.  Thus, the plaintiff's evidence is insufficient to rebut the defendant's legitimate, nonretaliatory grounds for his non-selection.[4]  The defendant's motion for summary judgment as to this claim is therefore granted.

---

[4] The plaintiff makes a passing argument pointing to other evidence that, in his view, "raise[s] doubt on the Agency's legitimate, nondiscriminatory reason for hiring Ms. Cinalli," specifically, "[t]he changing of the documents regarding the position, the past comments that Ms. Fehrenbacher made to Mr. Mamantov regarding his age, and her refusal to implement his desk audit together give rise to an inference of discrimination."  Pl.'s Opp'n at 19.  The Court is not persuaded.  The Court has already concluded that the evidence offered by the plaintiff is insufficient to support his claims of retaliation.  Fehrenbacher's 2002 comment that the plaintiff was "almost as old as" another employee can be distinguished from the comment made in Stone v. Landis Constr. Corp., where the Circuit held that the employer's stated concern that the plaintiff could not perform duties as a plumber because "you're old" was direct evidence of the employer's discriminatory intent.  442 F. App'x 568, 569 (D.C. Cir. 2011).  In Stone, the statement was made during the interview for the vacancy at issue and directly tied to the employer's concern that the plaintiff could not perform physical labor due to his age.  Id.  Here, the plaintiff cites no authority to

(continued . . . )

### 2.  Reassignment of the Contractor Tracking Task

To establish a prima facie case of retaliation on the basis of the reassignment of the

contractor tracking task, the plaintiff must show that the reassignment constituted a materially

adverse employment action.  A materially adverse employment action "is one that results in

significant harm or hardship, such as affecting the plaintiff's position grade level, salary, or

promotion opportunities . . . and 'might have dissuaded a reasonable worker from making or

supporting a charge of discrimination.'"  Bonnette v. Shinseki, 907 F. Supp. 2d 54, 69 (D.D.C.

2012) (quoting Burlington, 548 U.S. at 68) (internal citation omitted)).  The defendant argues

that the reassignment in March 2010 of the contractor tracking task that the plaintiff had been

performing does not constitute a materially adverse employment action by the defendant because

the task was merely "administrative" and did not require "any technical skills or expertise," the

plaintiff remains a contactor work assignment manager, of which role the contractor tracking

task plays only a small part, and the reassignment did not affect the plaintiff's position as a GS-

13 employee.  Def.'s Mem. at 20.

The plaintiff counters that because the contractor tracking task was reassigned to

individuals at a higher grade level, "it seems obvious that there is a certain status attached to it."

Pl.'s Opp'n at 22 (citing Pl. Ex. 1 (Mamantov Dep.) at 173:16–18).  The plaintiff further

---

(. . . continued )

support his claim that Fehrenbacher's 2002 statement, see Pl.'s Opp'n at 4, a comment that was made more than seven years before the events at issue here albeit in connection with a previous vacancy at the GS-14 level, is sufficient to rebut the defendant's legitimate, nondiscriminatory reason for his non-selection for the GS-14 position at issue here.  See Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007) ("the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated be discrimination") abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009).  In addition, Fehrenbacher's 2006 refusal to support reclassification of his fate assessor position to a GS-14 level is immaterial to the allegations here, which relate to an entirely separate GS-14 job vacancy for an exposure assessor, which as the plaintiff admitted, he was not.  Separately or even collectively, these assertions are insufficient to establish that the defendant's selection of Cinalli over the plaintiff was a pretext for retaliation.

contends that the task did require technical knowledge because it relied on the plaintiff's "knowledge of the chemicals that were reviewed as well as knowledge of the assessors' experience with the various chemicals." Id. at 22 (citing Pl. Ex. 1 (Mamantov Dep.) at 166–167).

The plaintiff's support for his claim that the reassignment of the contractor tracking task is insufficient, as it is based entirely on the plaintiff's own testimony regarding the task, and in particular, his own assertion that "it seems obvious that there is a certain status attached to" the task. See Holcomb, 433 F.3d at 892 ("purely subjective injuries, such as loss of reputation, are not adverse actions" (internal quotation marks omitted)). "[C]hanges in assignments or work-related duties do not ordinarily constitute adverse employment decision if unaccompanied by a decrease in salary or work hour changes," Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997). The plaintiff has failed to adduce evidence sufficient to establish that the reassignment was "materially adverse," especially in light of the facts that he remains a contractor work assignment manager, and by the plaintiff's own admission, his grade level and pay were unaffected by the reassignment and the task was "simple" and occupied very little of his time. See Def. Ex. 2 (Mamantov Dep.) at 172:18–173:15; 174:17–175:20. In Holcomb, the Circuit concluded that the plaintiff's showing of a "significant reassignment" of work duties constituting an "extraordinary reduction in responsibilities," despite maintenance of her previous grade level and pay, was sufficient to support her retaliation claim. 433 F.3d at 902. The plaintiff has made no such showing here. The Court therefore finds that the plaintiff has failed to establish a prima facie case of retaliation based on the March 2010 reassignment of the contractor tracking task, and the defendant's motion for summary judgment with respect to this claim must be granted.

**CONCLUSION**

The plaintiff has failed to offer any evidence of age and sex discrimination that rebuts the defendant's legitimate, non-discriminatory reasons for his non-selection for the GS-14 position. The plaintiff's retaliation claims must also fail because the plaintiff has failed to establish that the defendant's decision not to select him for the GS-14 position was a pretext for retaliation, and because he has failed to establish a prima facie case with respect to the reassignment of the contractor tracking task to another employee.  The defendant's motion for summary judgment must be therefore be GRANTED in its entirety.

**SO ORDERED** this 2nd day of November, 2015.[5]

REGGIE B. WALTON
United States District Judge

---

[5] An Order will be issued contemporaneously with this Memorandum Opinion.